The next case this morning is 522-0305, City of Altamont, Illinois, etc. v. Fritcher et al. Arguing for the appellant is David Durie. Arguing for the appellee is Kara Wade. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please know only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning, your honor. Mr. Durie, you ready to proceed? I am, your honor. Then go right ahead. Thank you. This case is here on summary judgment and an ordinance violation case, which is quasi criminal in the rules of civil procedure apply. The appellants submit that issues of fact exist precluding summary judgment on two issues. One, whether they were selectively prosecuted or the ordinance was selectively enforced against them. And number two, whether they were offered a reasonable accommodation under the American with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. With respect, and the appellees have raised the issue, arguing that the appellants waived these two issues by failing to present them in the trial court and addressing that issue first. It's clear that we cited cases and made the argument under both points that the frictors were selectively prosecuted and the ordinance selectively enforced and on whether or not reasonable accommodation was provided under the ADA. And we provided that in the reply brief. On selective prosecution, the frictors identified 11 other properties where there were fences and outbuildings that were on the 15-foot wide overhead power line easement, but they were not prosecuted and the ordinance was not enforced against them. Gary White, the zoning administrator, offered a competing affidavit in which he tried to explain why the other 11 property owners were not prosecuted and the ordinance enforced against them, which clearly creates a disputed issue of fact. In addition, the evidence before the court indicates that Gary White, the zoning administrator, had a personal grudge against the frictors in the initial telephone call of June 29, 2020, when he found out they had made a Julie request for underground utilities. He called them cursing and screaming at them, clearly indicating that no building permit would be granted. So on the selective prosecution, it's under the equal protection clause of the United States Constitution, 14th Amendment, section 1, which provides equal protection. Mr. Durie, I have a question. Yes, Justice Moore. On the issue of the accommodation of the ADA, would that be a defense to an ordinance violation or would that be a separate cause of action for relief? It's a defense. We have cited a case indicating that a reasonable accommodation applies to all activities of government. It's the case from the Ninth Circuit and I would submit that it applies to all activities, including the prosecution, for violation of the ordinance. Otherwise, it wouldn't make a right Federal Circuit. Yes, Your Honor, Ninth Federal Circuit. But there's no contrary authority stating that this could not be raised as a defense. It could only be raised as an affirmative matter in a separate lawsuit. And it wouldn't be very logical to say, well, first you have to be was a violation of the act because a reasonable accommodation was not made. So I would submit that it definitely could be raised as a defense and it was. Okay. On that same line of question, the defense of selective prosecution and failure to accommodate were not formally pled. Were they properly before the court? Well, they were. Of course, this was a ordinance violation in a criminal action in nature, but they were raised in the response to the motion for summary judgment. How was it raised? By specifically responding to the motion for summary judgment, stating that the attempt to enforce the ordinance was a selective prosecution or selective enforcement and that a reasonable accommodation had not been provided. And that's addressed specifically in the first point in our reply brief, in which we cite specifically the language that was raised in the response to the summary judgment motion. Okay. Thank you. I just want to, you brought up counsel, that they were based on the allegation made by the Fritchers that the zoning administration screamed, yelled at them, cursed at them during a phone call or that they alleged. But weren't there other facts that show that the city tried to work with them to come up with a solution for everybody's benefit? I would respectfully submit that's not the case, your honor. The facts are that the Fritchers extended their fence to the west on the north fence and the south fence. And in the north fence, they put in a 15-foot-wide double gate, and the city had no problems with that. The yard is only 75 to 85 feet wide where the power line crosses it. The Fritchers did not put in a double-wide gate or any gate in the south fence. The Fritchers also stated in their affidavit that a 15-foot-wide gate could not have been put in the south fence where the easement is because there is a utility pole that is on the easement just outside of the Fritchers' property and because their fence jogs there so that it will line up with the south wall of a red utility building, an outbuilding. But the Fritchers offered to extend the easement so that the city could put a 15-foot-wide gate in the south fence if they deemed that was required for access to the easement, so long as the city did it at its expense. So the whole thing boiled down to who was going to put in the gate? Right. The Fritchers said they would extend the easement if the city insisted that they need a gate. And by the way, there's no power poles on the Fritchers' property for this overhead power line. So the only thing that the easement does is these power lines go overhead. There's a 15-foot-wide gate in the north fence. It's only 75 to 85 feet wide where the line crosses it. There's been no explanation as to why another gate is required in the south fence so that a vehicle could enter from both the south fence or the north fence. There's been no explanation as to why that would be necessary under any circumstances. And why would the utility even need to be getting into their backyard? There's no poles there. The only thing is, an overhead power line. So I suppose... They do have an easement to get in there. Right, they need an easement, but we also... They do have an easement already, correct? Correct. And the easement, and I cited this in the reply brief, the servant estate is entitled to make reasonable changes as long as it doesn't interfere with the operation of the easement. The only purpose of the easement here was to have these power lines go overhead. The frictors were not interfering with that in any way whatsoever. And there's no reason, there's no indication as to why they would need any gate to access the easement. It's an overhead easement. But there is a gate in the north fence. Why do need a gate in the south fence as well? May they need equipment to be able to get on the ground to reach the wires? Well, there's a gate on the north fence. It's only a 75 to 85 foot wide yard. Why do they need a gate on the south fence as well? How wide is the easement? 15 foot wide. But the power lines cross from north to south, so they cross the distance of about 75 to 85 feet, crossing both fences. And the overhead power lines are also accessible with cherry pickers and so forth, but there's no reason to be touching the overhead power lines in a place where they don't connect too many poles. They just occupy the space above the ground. Well, if the wires somehow came down, they may have a need to get in there and get the wires back up. Well, that would be true, Your Honor. And there's a 15 foot wide gate. And they couldn't put a 15 foot wide gate in the south fence. There's an issue of fact as to this on the easement, which is all they would have a right to do if they were going to enforce easement rights. They couldn't put one there that would permit equipment to get through the fence, through the gate. That's an issue of fact. And as far as the reasonable accommodation issue, the only accommodation the city offered, and I think this is sort of getting back to the earlier question, is to build a fence, a 15 foot wide gate, I'm sorry, a gate, not a fence, in the south fence at the Frictors expense on the easement, which wouldn't even work. In exchange, the Frictors has said, we'll extend the easement. You're going to have to move the gate over from where the easement is a few feet in order to put in a gate that would work. But we'll do that. You can have that right. You just have to do it at your expense. And we don't see why you have to have a gate in both fences. And this is at the same time where there's 11 other properties which have outbuildings and fences on the easement, which is not being enforced. There's been no one, this ordinance has not been enforced against anyone other than the Frictors. As far as the waiver issue. Does the city maintain its own power company? I do not believe that is the case. I believe it's a separate power company, your honor. The power company hasn't expressed any interest in this whatsoever, to my knowledge.  I believe that is the case. So they ran into the city so that they could accommodate the power company. I believe that is the case, but I can't say with 100% accuracy, your honor. Well, the last point, I think I touched on this earlier about the waiver. Waiver is an relinquishment of a known right. And in this case, the Frictors cited the American with Disabilities Act, the section 504 of the Rehabilitation Act of 1973, the 14th amendment to the United States Constitution, section one, equal protection of the law, and three cases under that amendment. In their response to the summary judgment motion, that could hardly be a waiver of the two points that we've raised here. I have nothing further to add unless there's some questions. Justice Moore or Justice McKinney, do you have any questions at this time? No questions. No other questions. Well, thank you. Obviously, counsel, you'll be given your time for rebuttal. Miss Wade, go right ahead. Thank you, Judge. May it please the court and counsel. There are a lot of issues that Mr. Gray raised that are simply incorrect, and frankly, not supported by the record at all in this case. I'll try to hit them as I go through. But I think the trial court and Mr. Dury's clients have not addressed the issue of whether they're actually entitled to a reasonable accommodation under the laws that they cite to. Are they required to request one first? Yes, Judge. First of all, I believe they are required to request one first. There's some case law I cite in my brief that talks about the steps that must be followed. They put it up first and asked for forgiveness later after they were specifically told by the city judge that they easement and they needed to go to the city to talk about it. The first step is to request reasonable accommodation, and they didn't do that. So there's one reason why it fails. But if you actually go to the analysis of whether they're entitled to a reasonable accommodation, that fails as well. If you look at the, and I'm going to butcher this name, the Okinawa case from the Seventh Circuit, the CICE 300 F3D 775, the specific site 783, it talks about the elements for a reasonable accommodation, and those include the accommodation has to be reasonable and necessary to afford a handicapped person the equal opportunity to use and enjoy a dwelling. And that's to get a reasonable accommodation under the Fair Housing Act, the ADA, or the Rehabilitation Act. And Judge, they don't meet these standards. First of all, to be reasonable, it cannot be so at odds with purpose behind the nuisance ordinance. And that's specifically what's happening here. They're encroaching upon and obstructing our ordinance. And that's what the ordinance prohibits. You cannot encroach upon or obstruct ordinance. And that's exactly what's happening here. You can see the fence, the extended fence through photos. I've attached them. They're part of the record. The before photos showing where the electrical lines are located are found at C215 and 225 for Mr. Fritcher's matter. And then the after photos are shown at 216 through 17 for Mr. Fritcher's matter and 215 through 16 for Emily's matter. I have two other questions. Does the Fritcher's failure to request accommodation bar them from bringing a claim under the ADA? I have argued that, Judge, and I cite to a case. Unfortunately, it is an unpublished case, but it's an actual Illinois case. And you can look at that just for guidance purposes, but yes. Was that decided before or after the rule change on Rule 23 cases? It was cited after, Judge, and I believe it is. Let me make my brief, Judge. But it also cites to 11th Circuit case, Judge, that is a fully published case that talks about that. City of Harvard v. Nevitt. It's 2020 LAP 2D 191126. Again, it is unpublished, but it refers to and relies on this Wisconsin Community Service case, which is 465 F3D at 748. And I also provide a 7th Circuit case, United States v. Village of Palatine, 37 F3D 1230. It dismissed the claim alleging discrimination based on refusal to provide a reasonable accommodation because the plaintiff never invoked the procedures that would allow it. So they never requested it. They just simply asked for it after the fact. And again, Judge, a lot of times... Another question on the city's offer to put in the gate. Does that qualify as a reasonable accommodation? Well, first of all, Judge, a municipality does not have to participate. It's not like an employment-related... I understand that, but I'm saying, does their offer qualify? Absolutely, Judge. I mean, it gave a compromise of allowing them to maintain this obstruction, this encroachment, to protect their son, while at the same time giving the city unfettered access. Now, a couple of points on that. Mr. Drury indicated that the Fritcher's offered to allow the city to put that in. That simply never happened. The first time that was ever discussed was in their affidavit. This is a summary judgment issue. Are you saying that there's nothing about that in the record? Correct, Judge. The first time that was ever mentioned or offered was in their response to our motions for summary judgment. In fact, we provided them the license agreement after the because they told the city council, the commissioner who met with them, yeah, we'll do that. And again, this issue could have been addressed if they requested it to begin with before actually putting the fence up. But putting that aside, we prepared the license agreement, the city attorney did. We sent them to them. We never received a response. The only response we got was we're going to file a claim with the IDHR. And that was after months. There was never an offer. And by the way, the city does not have to fund the reasonable accommodation. And it certainly is a reasonable accommodation. It is a way for them to keep the fence that they want, but still allow us unfettered access if the fences are open. Now, and again, this idea that it may have to go beyond the easement, the license agreement, which you'll find at C-236, just says that the gates have to be put somewhere on that south wall. It doesn't say it has to be on the easement. It has to be put somewhere on there so we can get our equipment through, because that's correct. There's lines overhead. If they fell, we would need unfettered, unobstructed access to that backyard. And the only way to do that is to have gates on both sides and have them open to let us in on both sides. But going back to the analysis under the economic case, so it's not gutting the purpose of the statutes or the ordinance by asking for a waiver, because it's just allowing it to be an obstruction. But the most important fact to look at is that it's not necessary. This is not necessary. They're asking for a larger fenced-in backyard, not for an initial fence. That's an important key fact in this case. They had a fenced-in backyard that was off the easement. They asked for a permit. They understood it. It is their property subject to the easement, correct? Correct. And they can't obstruct the easement, Judge. I mean, they can't put a thing, a static structure on there that prevents us from getting into it. And they didn't follow the permitting process. But they didn't raise the issue. Correct me if I'm wrong. They didn't raise the issue of what is or is not allowed under the easement. That's correct. They never discussed that with us, Judge. They just put the fence up after we told them not to. But the necessary part of it has to be necessary to ameliorate the effects of the disability. They had already accounted for that, Judge. They had a fenced-in backyard. They already had one. They just wanted a bigger, larger fenced-in backyard. And I understand that. Everybody wants a bigger fenced-in backyard. But that's not a reasonable accommodation. That's not a reason to require us to allow approachment on our easement whenever they could have still met the needs of their son through the fence they already had. And that can't be factually disputed. The fence existed. It was there. It was permitted by the city because it was off the easement. And they decided to extend it without permission, knowing that there was a process to follow that they refused to follow. So because of that, they're not entitled to a reasonable accommodation. They're not even entitled to what they're asking for. But putting that all aside, and we've talked about this, we offered it. The city offered a reasonable accommodation to them through the license agreement. Now, this idea that there's a disputed fact as to whether, again, the gates can be put on the south wall within the easement area, well, if it can't be on the easement area, then the answer simply is either move it so we can get to it or the fencing's to come down. It encroaches. And it's dangerous. I mean, there's a balancing test that talks in the balancing test that you look at for a reasonable accommodation. You look at the need of the city to have unfettered access to the power lines for safety, maintenance, and operational purposes against their desire to simply have a If those lines went down underneath there, which wouldn't be safe for anybody, by the way, it's confined now, it wouldn't be safe for them, the Fritchers, their son, their invitees, the city's personnel, at least now again, they're now, if they went down, they're in a confined area. But putting that all aside, the city said, okay, we understand your concerns, and we'll work with you. And then they simply refused the reasonable accommodation that was added analysis they didn't provide to the trial court. I would submit that I don't, they never touched on whether they're actually allowed a reasonable accommodation. And they did provide quite a bit more analysis to this court than they did the trial court. I would submit that I don't think you're allowed to preserve your best arguments for appeal. These same arguments and analysis should be provided to the trial court for review. And I would argue that because they didn't, those were waived. But even if you look at the cases they Berkeley in the summer cases, cited and support the idea that the accommodation offer was not reasonable, they actually don't support what they're saying, especially the summers case. And that's at 940 F 3d 133. That court in summers, and it's in the First Circuit, concluded that the plaintiff was not entitled to a waiver of the sprinkler ordinance that was at issue in that case, because such an exemption would have thwarted the salutary purpose of the ordinance. The summer court noted that the city attempted to address the plaintiff's concerns while also ensuring their compliance with the law. That's exactly what happened here and found that the quote, bare fact that the city did not yield to the plaintiffs and treaty for an exemption from the sprinkler system ordinance did not demonstrate a lack of good faith or reasonableness of the city. So we tried to work with them. And the only thing that they would be reasonable is to let the keep the fence how it is a fence that they put up and in violation and complete ignorance of the notice that was given to them not to do it. And, and even still the city tried to work with them. This idea that we would have to pay the cost that's not supported by any kind of case law. As I noted to Justice Moore, the city doesn't have to participate, really, in this determination of whether a reasonable combination for something of this nature and we did that we've gone above and beyond the call of what we're required to do. There is absolutely no idea there's no authority for the concept that the city municipality should actually have to pay the cost to comply with the reasonable accommodation. And I just want to just briefly judge on the selective enforcement and the selective prosecution. Again, that I don't, I don't think there's intentional but they're trying to create these issues of fact indicated that they cited 11 properties in their affidavit, versus the 10 that we address that's simply not correct. I would invite the court to look at the Fritch's affidavits found at C-291 through 292 and 296 through 97 and Aaron's matter and compare it with Mr. White's affidavit found at C-312 through 14. There were 10 properties that were cited, 10 properties, not 11, 10. And we addressed all 10 but the issue with all properties that they cite is that they are not similarly situated to the Fritch's property. None of these properties involved owners who had not formed or constructed the encroachment yet was told by the city not to do so. And they did so in contravention of the instruction they were given. None of them. They're not similarly situated. So under both of those types of analysis, if the city has a reasonable or rational basis to proceed as they did, then the analysis fails. And that's the explained, you can't do this. You need to talk to the city, which by the way, Mr. White, it's not a disputed fact. He doesn't say he yelled at them, but putting that all aside, there's no evidence in the record that he participated in the decision to prosecute at all. They pointed this as analysts. And after that conversation, Mr. White was no longer involved. It was the city commissioner, Mr. Walker, which you'll see through his affidavit. There was no decision, no participation by Mr. White in the decision to prosecute. And they can't point to any evidence that there was because he didn't. And again, as Justice Moore pointed out, or Justice Bowie, sorry, the reality of it is after that conversation took place, the city wouldn't met with them and try to come up with a compromise that would allow them to that the record indicates there was no discrimination. And then by the way, to succeed on a discrimination type selective enforcement claim, you have to show that the other owners are in a different protected class. And that has not been done here. They just cite to these properties. For all we know, all these properties could be owned by similarly handicapped people. There's no evidence that they can succeed when they don't even know the nature of the folks who live under their properties. And one other point I would like to make, they indicate in the record that before they put up the wooden fence, the Frigidaire had actually had a chain link fence in this area for some time before they put the wooden fence up. And this actually further supports the idea that we didn't selectively enforce this. The city only became involved with this because we found out they were going to put something on our easement. The city zoning administrator said, you can't do that. You can't do that. You need to talk to the city. And you need a permit, which they are well aware of. And then they ignored it. And they put the fence up the next day. And even despite the fact that they have ignored what the zoning ordinance says, the city still worked with them to attempt to come up with a compromise that they've just simply rejected. Their way is not necessarily the only reasonable way. And I would submit to this court that the license agreement certainly constitutes a reasonable accommodation that they refuse to comply with. As a result, the trial court agreed and entered some re-judgment. And I would ask that this court affirm this re-judgment. Any questions? Thank you, counsel. Justice McCanny or Justice Moore, do you have any questions for Ms. Wade? No other questions. No questions. All right. Thank you, Ms. Wade. Thank you. Mr. Dury, go right ahead with your rebuttal. Thank you, Your Honor. I'm going to quote from page 8 of our reply brief, which in turn quotes from page 3 of the appellee's brief. This is on the issue of whether the Fritchers had requested a reasonable accommodation. In their brief, in its brief, the city says on page 3, quote, in response to the notice to abate, the Fritchers submitted a notice of appeal to the city demanding that they be allowed to maintain the extended fence on the public utility easement as a reasonable accommodation for the safety of their disabled son, close quote. There was definitely a request for a reasonable accommodation, and the city has admitted that in its brief. And in the record, they refer to page 224 of the common law record. The second issue I'd like to address is that the request for reasonable accommodation was because of the autism, the severe case of autism that the Fritchers' minor child has. He was 14 years old at the time, and one of the characteristics of autism, especially among children, is they have a They're attracted by large bodies of water. It's a risk to their safety. And so the reason that the Fritchers extended the fence in their backyard out to the outbuilding was to provide more space and make sure that it was secure to prevent their minor child from bolting and elopement. He had had 25 operations on his brain and heart and was at extreme risk to his own safety if they were not able to keep him on their property. So that's the reason they did it, not simply because they wanted a larger backyard. I would also agree. I understand all that, and I'm very understanding for their care and concern for their child. But on a legal point, can you point this court to any case that would require the city to pay for the accommodation? The, yes, your honor, the cases that we've cited, I'll see if I can locate it here. Other than the cases you have cited, is there any other authority? Well, the cases that we cited are consistent with other authority that reasonable accommodation takes into consideration payment for any changes who's going to pay for it. So that is part of the pay for it or the city would pay for it. And the cases that I've cited, your honor, talk about there being, this is a fact-bound determination. Any issue about reasonable accommodation is fact-specific, case-by-case analysis. That did not occur in this case whatsoever. It was simply a motion for summary judgment that we have an easement and we insisted that you put in two fences and you didn't put them in. So we're entitled to summary judgment. That was the analysis. So we believe there are, we have raised issues of fact, which if the case is remanded would require an in-depth analysis. But one of the factors to be considered would be who would pay for the fence if the city concludes and establishes that it's really necessary. And I didn't devote much time to this, but there's been no real analysis as to why two gates are required. I mean, there's ample access to the backyard from the gate that exists and the city has no problem with that gate. And the backyard is only 75 to 85 feet wide where the easement crosses it. But why are two gates required? One in the south fence and one in the north fence. Plus part of the analysis would have to be looking at the other 10 or 11 properties in this fairly small town that have buildings and fences on the easement to that, part of that review would be important to determine what would be reasonable under this case. What's the population of Altamonte? That I do not know. I just know it is fairly small. It's between Vandalia and Effingham on I-70 about halfway. Well, I know where it is. I'm wondering the population. I don't, I do not know the, I apologize, your honor. I do not know the exact population, but I know it's small. It's not a big town. And almost every property on the power line in the city has some encroaching building or a fence, which is, should be part of the evaluation. Well, counsel, wouldn't you agree that issues such as what would be reasonable accommodations, who should pay for such reasonable accommodations, wouldn't you agree that those might be conversations that would have been very helpful before the fence was extended? I think the record will show that there were, your honor. There were extended, there were extended conversations about this before I ever got involved. There, there was several meetings and hearings at city hall, and there's, there's a extent, reference to those is in the record, maybe not a verbatim, but the fact that they occurred. Okay. Well, uh, obviously, um, we've run, run through our time. Justice McCaney or Justice Moore, before we let counsel go, uh, do you have any final questions? No other questions. All right. Well, thank you, counsel. Obviously we'll take the matter under advisement. We will take the matter under adjustment.